UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AURELIA MANCILLA,<br><br>    Plaintiff,<br><br>  -against-<br><br>ABM INDUSTRIES, INCORPORATED; ABM INDUSTRIES, INCORPORATED d/b/a ABM JANITORIAL SERVICES, INC; ABM INDUSTRIES, INCORPORATED d/b/a ABM ONSITE SERVICES, INC.; SCOTT SALMIRS; and EDDIE SANDERS,<br><br>    Defendants. | Index No. 1:20-cv-01330 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ABM'S MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY ACTION**

Craig R. Benson
Ivie Serioux
Littler Mendelson P.C.
900 Third Avenue – 8th Floor
New York, NY 10022
212.583.9600

TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ................................................................. 1

STATEMENT OF FACTS ...................................................................... 2

    I.      PLAINTIFF ELECTRONICALLY SIGNED THE MUTUAL
          ARBITRATION ACKNOWLEDGMENT ............................................ 4

ARGUMENT ................................................................................. 9

    I.      THE COURT SHOULD COMPEL ARBITRATION AND/OR STAY
          THIS ACTION PENDING ARBITRATION ........................................ 9

          A.     The Federal Arbitration Act Mandates the Enforcement of
                Plaintiff's Arbitration Agreement .............................................. 9

          B.     Second Circuit Precedent Dictates the Enforcement of Plaintiff's
                Arbitration Agreement ......................................................... 10

          C.     There Has Been No Waiver of the Arbitration Agreement .................... 15

          D.     The Court Should Dismiss Plaintiff's Complaint Without Prejudice
                to Her Ability to Pursue Such Claims In Arbitration............................. 16

          E.     The Court Should Stay This Action Pending Arbitration If the
                Action Is Not Subject to Dismissal ......................................... 17

CONCLUSION ............................................................................... 17

TABLE OF AUTHORITIES

PAGE(S)

## Cases

*14 Penn Plaza LLC v. Pyett*,
  556 U.S.247 (2009) ........................................................................................................10

*Albertson v. Art Inst. of Atlanta*,
  No. 1:16-CV-03922 WSDRGV, 2017 WL 9474223, (N.D. Ga. Mar. 23, 2017)
  No. 1:16-CV-3922-WSD, 2017 WL 1361293 (N.D. Ga. Apr. 14, 2017)...............................14

*Boyum v. Horizon Condo.*,
  No. 05 CIV. 4801 TPG, 2007 WL 576052 (S.D.N.Y. Feb. 22, 2007) ....................................12

*Brown v. St. Paul Travelers Co.*,
  331 Fed. Appx. 68, 2009 WL 1740573 (2d Cir. June 19, 2009) ............................................16

*Chamois v. Countrywide Home Loans*,
  No. 02 CIV. 9553 (MBM), 2003 WL 23022033 (S.D.N.Y. Dec. 29, 2003) ...........................12

*Collins & Aikman Prods. Co. v. Bldg. Sys.*,
  58 F.3d 16 (2d Cir. 1995)........................................................................................................9

*Doctor's Assocs., Inc. v. Distajo*,
  66 F.3d 438 (2d Cir. 1995).....................................................................................................15

*Factor v. Societe Generale N. Am., Inc.*,
  2006 U.S. Dist. LEXIS 32565 (S.D.N.Y. May 24, 2006)......................................................17

*Genesco, Inc. v. T. Kakiuchi & Co.*,
  815 F.2d 840 (2d Cir. 1987)................................................................................................9, 10

*Gold v. Deutsche Aktiengesellschaft*,
  365 F.3d 144 (2d Cir. 2004)....................................................................................................9

*Gonder v. Dollar Tree Stores, Inc.*,
  144 F. Supp. 3d 522 (S.D.N.Y. 2015)....................................................................................11

*Hartford Acc. & Indem. Co. v. Swiss Reinsurance Am. Corp.*,
  246 F.3d 219 (2d Cir. 2001)....................................................................................................9

*Henry v. Turner Const. Co.*,
  No. 09 Civ. 9366(SAS), 2010 WL 2399423 (S.D.N.Y. Jun. 14, 2010) ................................16

*JLM Indus., Inc. v. Stolt-Nielsen SA*,
  387 F.3d 163 (2d Cir. 2004)....................................................................................................11

TABLE OF AUTHORITIES
(CONTINUED)

PAGE

*Katz v. Cellco P'ship*,
    794 F.3d 341 (2d Cir. 2015)....................................................................17

*Lambert v. Austin Ind.*,
    544 F.3d 1192 (11th Cir. 2008) ..............................................................14

*Latif v. Morgan Stanley & Co. LLC*,
    No. 18-cv-11528, 2019 WL 2610985 (S.D.N.Y. June 26, 2019) ...........14

*Lawrence v. Sol G. Atlas Realty Co.*,
    841 F.3d 81 (2d Cir. 2016).......................................................................13

*Litvinov v. UnitedHealth Group, Inc.*,
    2014 WL 1054394 (S.D.N.Y. Mar. 11, 2014) ........................................16

*Lomax v. Woodmen of the World Life Ins. Soc'y*,
    228 F. Supp. 2d 1360 (N.D. Ga. 2002) ..................................................14

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*,
    252 F.3d 218 (2d Cir. 2001).....................................................................15

*Martin v. SCI Mgmt. L.P.*,
    296 F. Supp. 2d 462 (S.D.N.Y. 2003)...............................................11, 14

*Moreno v. Strickland*,
    567 S.E.2d 90 (Ga. Ct. App. 2002) .........................................................14

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983).......................................................................................9

*Moton v. Maplebear Inc.*,
    2016 U.S. Dist. LEXIS 17643 (S.D.N.Y. Feb. 9, 2016).........................17

*Oldroyd v. Elmira Sav. Bank*,
    134 F.3d 72 (2d Cir. 1998)..................................................................10, 11

*Pitter v. Prudential Life Ins. Co. of Am.*,
    906 F. Supp. 130 (E.D.N.Y. 1995) .........................................................13

*Ragone v. Atlantic Video*,
    595 F.3d 115 (2d Cir. 2010).................................................................12, 13

*Robinson v. Entm't One US LP*,
    No. 14-CV-1203 AJN, 2015 WL 3486119 (S.D.N.Y. June 2, 2015) .....16

ii

TABLE OF AUTHORITIES
(CONTINUED)

PAGE

*Royal v. CEC Entertainment, Inc.*,
    No. 4:18-cv-302, 2019 WL 2252151 (S.D. Ga. May 24, 2019) ...............................................15

*Safra Sec., LLC v. Gonzalez*,
    764 F. App'x 125 (2d Cir. 2019) .........................................................................................16

*Sherrard v. Macy's System and Technology Inc.*,
    724 Fed. App'x. 736 (11th Cir. 2018) .................................................................................15

*Stolt-Nielsen S. A. v. Animal Feeds Int'l Corp.*,
    559 U.S. 662 (2010) .............................................................................................................9

*Vera v. Saks & Co.*,
    335 F.3d 109 (2d Cir. 2003) .................................................................................................9

*WorldCrisa Corp. v. Armstrong*,
    129 F.3d 71 (2d Cir. 1997) .................................................................................................10

**Statutes**

9 U.S.C. §§ 1 et seq. ....................................................................................................................9

9 U.S.C. §§ 3, 4 .................................................................................................................10, 17

**Other Authorities**

N.Y. C.P.L.R. § 7515 .................................................................................................................14

## PRELIMINARY STATEMENT

Plaintiff Aurelia Mancilla ("Plaintiff" or "Mancilla") acknowledged an express, mandatory arbitration agreement (the "Agreement") whereby she explicitly agreed to submit all claims against Defendant ABM Aviation Inc.[1] ("Defendant" or "ABM") and ABM's (past, present, and future) employees and agents, to final and binding arbitration.  Notwithstanding her assent, Mancilla filed the instant action against ABM, Scott Salmirs and Eddie Sanders, asserting claims arising out of her employment that fall squarely within the purview of the Agreement.  Specifically, Plaintiff alleges harassment and common law claims relating to her employment with ABM.

The Agreement (attached to the Declaration of Rhonda Rawlins as Exhibit "A" and made a part hereof by this reference) in Section "A" sets forth:

> "Final and binding arbitration before a single, neutral arbitrator shall be the exclusive remedy for any "Covered Claim" …  A "**Covered Claim**" is any claim … that arises between [Plaintiff] and [ABM and] its … employees …"

Section B sets forth:

> "Arbitration will occur in the county in the United States in which [Plaintiff] reside[s] at the time the claim is filed by any of the parties to this agreement reside ….  The arbitrator shall apply the substantive law (and the laws of remedies, if applicable) of the state in which the Covered Claims arose, or federal law, or both, as applicable to the Covered Claims …"

Plaintiff resides in Georgia, worked at ABM's location in Atlanta, Georgia and all allegations alleged in her Complaint that gave rise to her causes of action arise out of her employment in Georgia.  There can be no dispute that the Agreement encompasses all claims

---

[1]  Plaintiff has named incorrect parties in this action, as her only employer was ABM Aviation, Inc., a non-named defendant.  Plaintiff was never employed by ABM Industries Incorporated. Further, ABM Industries Incorporated does not d/b/a either ABM Onsite Services, Inc. or ABM Janitorial Services, Inc., and, effective January 1, 2017, ABM Janitorial Services, Inc. and ABM Onsite Services, Inc. were merged out of existence.  For purposes of this motion only, ABM is responding on behalf of the named ABM Defendants and Scott Salmirs.

asserted in Plaintiff's Complaint.  Furthermore, as set forth below, the Agreement is unambiguous, mandatory, and enforceable pursuant to New York Law, Georgia Law, and the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. (the "FAA").  Under federal law, the existence of an agreement to arbitrate, such as the clear agreement Plaintiff signed here, mandates that the action be dismissed and that Plaintiff be compelled to bring her claims in an arbitral forum, at the American Arbitration Association in Georgia.  Accordingly, the Court should compel Plaintiff to submit her claims to arbitration in Georgia.

## STATEMENT OF FACTS

Plaintiff began her employment with ABM on or about August 31, 2018.  (*See* Declaration of Rhonda Rawlins ("Rawlins Decl.") ¶ 4.)  Plaintiff was employed as a janitorial worker in ABM's Atlanta, Georgia Airport location.  (Id.)  All of the allegations given rise to the causes of action in Plaintiff's Complaint occurred in Atlanta, Georgia.  (*See* Declaration of Craig Benson ("Benson Decl.)" Ex. A; Complaint ("Cplt.") ¶ 9.)  ABM maintains a Mutual Arbitration Agreement (the "Agreement").  (*See* Rawlins Decl. ¶ 3, Ex. A.)  On August 31, 2018, at approximately 1 p.m., Plaintiff knowingly and voluntarily agreed to abide by the terms of the Arbitration Agreement by electronically signing the following Mutual Arbitration Agreement Acknowledgment ("Acknowledgment"):

**MUTUAL ARBITRATION AGREEMENT**

**BY SIGNING THIS AGREEMENT, I KNOWINGLY AND VOLUNTARILY WAIVE FOR ANY COVERED CLAIM THE RIGHT TO CLASS, REPRESENTATIVE, AND COLLECTIVE PROCEDURES AND THE RIGHT TO TRIAL BY JURY OR JUDGE, TO THE FULL EXTENT PERMITTED BY APPLICABLE LAW. I RETAIN ALL OTHER RIGHTS, INCLUDING MY RIGHT TO COUNSEL, TO CALL AND CROSS-EXAMINE WITNESSES, AND TO HAVE MY CLAIMS ADDRESSED BY AN IMPARTIAL FACT FINDER. I ACKNOWLEDGE THAT I AM HEREBY ADVISED TO SEEK LEGAL ADVICE AS TO MY RIGHTS AND RESPONSIBILITIES UNDER THIS AGREEMENT AND HAVE**

**AVAILED MYSELF OF THE ADVICE OF COUNSEL TO THE EXTENT I WISH TO DO SO.**

**I ACKNOWLEDGE THAT I HAVE CAREFULLY READ THIS AGREEMENT, AND THAT I UNDERSTAND ITS TERMS.**

(*See* Rawlins Decl. ¶ 5, Ex. B.)

The actual Arbitration Agreement explains the arbitration process in simple terms. (*See* Rawlins Decl., Ex. A.) It clearly defines the procedure for initiating arbitration and selecting an arbitrator, arbitration fees (which ABM agreed to pay), the scope of the arbitrator's authority, the governing procedures by which the arbitration will be conducted, and available remedies. (*Id.*) The Agreement's arbitration procedure is mutual, requiring both Plaintiff and Defendant to arbitrate their disputes against each other. (*Id.*) However, in flagrant disregard of this Agreement, Mancilla filed the instant action against ABM. In fact, at the same time, filed the exact same claims in state court in Georgia. (see Benson Decl. ¶ 2)

ABM, through its counsel, requested Plaintiff to withdraw the New York and Georgia actions, and arbitrate her claims pursuant to the Agreement in a phone conversation and several emails dated February 4, 10, 11, 12, and 13, 2020. (*See* Benson Decl. Ex. C.) Plaintiff's counsel ultimately responded stating that Defendants would need to make a motion. (*Id.* at Ex. C.) Thereafter, they voluntarily dismissed the Georgia matter only.

Although ABM's counsel attempted to resolve this issue informally, Plaintiff's refusal to honor her contractual obligation under the Agreement has left ABM with no choice but to petition the Court for an order compelling Plaintiff to arbitrate her claims and stay all proceedings.

I.     **PLAINTIFF ELECTRONICALLY SIGNED THE MUTUAL ARBITRATION ACKNOWLEDGMENT**

Defendant uses recruiting technology called Jobalign as an applicant tracking system during the hiring process.  Applicants are required to provide contact information including an email address that is entered into the system.  (*See* Rawlins Decl. ¶ 6.)

Defendant contracts with a third-party vendor, Sterling Talent Solutions ("Sterling"), to perform employment background checks on candidates and to manage the onboarding process for employment.  When an applicant applies for a job with Defendant, the applicant is required to provide a contact email address.  The applicant is also required to create a password known only to the applicant.  Once Defendant has interviewed and offered the applicant a position, Defendant electronically provides pertinent information to Sterling including the applicant's email address.  This electronic transmission to Sterling occurs when a recruiter or hiring manager changes the candidate status to "hired" and clicks the "onboard" button in Jobalign.  (*See* Rawlins Decl. ¶ 7.)

Sterling sends the applicant (now candidate) an instructional email providing a username and temporary password together with a link to the ABM Candidate Portal.  The process is as follows:

1.     The first step in the process requires the candidate to click on the "Get Started" link in the email that directs the candidate to the ABM Candidate Portal.  Once directed, the candidate must enter his/her Username and Password into the browser.  This provides access to the ABM Candidate Portal.

2.     The candidate's attention is drawn to his/her inbox where he/she is tasked to "Review and Sign Job Offer Confirmation" and instructed to click on the "Launch Task" link.  This link pulls up an electronic Job Offer Confirmation document containing information about

the candidate, the position, job site location, rate of pay, start/hire date and pay frequency.  The candidate is instructed to review the information on the Job Offer Confirmation.

3.     The candidate is provided information on e-signing documents.  The candidate is asked to consent to use an electronic signature to electronically sign various forms.  The candidate is provided with a Consent and Notice Regarding Electronic Signature which reads, in pertinent part, as follows:

> By clicking the "I agree to use an electronic signature" button, you agree to electronically sign the following forms.  You agree your electronic signature is the legal equivalent of your manual signature.  You further agree that your use of the keypad, mouse, or other device to select an item, button, icon or similar act/action, constitutes your signature as if actually signed by you in writing.  You also agree that no certification authority or other third-party verification is necessary to validate your electronic signature and that the lack of such certification or third-party verification will not in any way affect the enforceability of your electronic signature.
>
> …
>
> If you decline to use an electronic signature by clicking the "I Decline to Use an Electronic Signature" button, you will be asked to enter your reason for declining.
>
> You should contact your employer to manually sign your document.  After authorizing the use of your electronic signature, you may still withdraw your consent.  To do so, you must contact the employer for their withdrawal procedures, and to understand any consequences or fees which may apply.

4.     There are two links for the candidate to choose: One provides "I Agree to Use an Electronic Signature," and the other states "I Decline to Use an Electronic Signature." (*See* Rawlins Decl. ¶ 9.) If the candidate selects the "I Decline to Use an Electronic Signature" button, the candidate is asked to provide a reason for declining.  The process ends at this point and the candidate cannot move forward with electronic onboarding through Sterling. The candidate may then contact ABM to manually sign the documents as an alternative to electronic signing; however,

if the candidate chooses not to sign the documents manually or electronically, he or she may not continue the application process. (*See* Rawlins Decl. ¶ 9.)

5.      If the candidate has agreed to use an electronic signature, the candidate is given the choice of a button to select a signature or a button to draw an electronic signature.  In the event the candidate selects the "Signature" button, an electronic version of their name and of their initials appears in cursive.  This is not the same as a facsimile of the usual signature that the candidate uses.  In the event the candidate selects the "Or draw your signature" button, the candidate has the option to draw their own electronic signature and initials to use going forward.  After selecting their preferred electronic signature format, the candidate is requested to click on the "Proceed to e-Sign Preview" button. (*See* Rawlins Decl. ¶ 10.)

6.      The candidate will then receive an email from the Candidate Portal.  The email advises the candidate that as part of their application with ABM, a pre-employment screening is required.  The email directs the candidate to review their rights under the Fair Credit Reporting Act by visiting a link that is provided in the email:

http://www.talentwise.com/fcra/Files/FCRA_Summary_of_Rights.pdf.

It also instructs the candidate to visit the following URL link to access the Applicant Certification and Authorization form to proceed to the pre-employment screening. https://portal.talentwise.com/33ff5abc58b/ptl/dashboardphp?&Sender=16808979&Email=Ron.S prings ABM%40yahoo.com&OverrideCandidateID=5155181. (*See* Rawlins Decl. ¶ 11.)

7.      Following successful completion of the background check, the candidate is considered an employee and is sent an email by Sterling from the Candidate Portal.  The employee is instructed to click the "Get Started" button to sign into the Candidate Portal and tasked to complete and sign onboarding acknowledgement forms. (*See* Rawlins Decl. ¶ 12.)

8.      The Candidate Portal provides a list of electronic documents and policies that must be opened, reviewed in their entirety, completed, and, if agreed, signed in the following order:

- Form CC-305; EEO Form; Emergency Contact; W4; Biometric Clock; Policy Employee Notice and Consent Form; Direct Deposit Authorization; Pay Method Selection; Health Care Exchange Notice Acknowledgment; Wage Policy Acknowledgment; Employee (Service) Handbook Acknowledgement; Mutual Arbitration Agreement Acknowledgment; Employee Instructions, Information, and Work Rules Acknowledgment; Drug-Free Workplace Policy Acknowledgment; Customer Confidentiality Acknowledgement; Policy Against Harassment in the Workplace Acknowledgement; Prior Employer Information; Acknowledgement; Code of Business Conduct (COBC). (*See* Rawlins Decl. ¶ 13.)

The Candidates are given unlimited time to read and review the policies and are not monitored by any individuals.

9.      Finally, the employee is asked to regularly check their email account for emails from the Candidate Portal.  If employees have any difficulty completing this process, they are instructed to contact the Hiring Manager or HR Department.  This concludes the electronic onboarding process through Sterling and at this point the employee has been onboarded.  (*See* Rawlins Decl. ¶ 14.)

As the Human Resources Director for ABM over the location where Plaintiff worked in Atlanta, Georgia, Rhonda Rawlins has electronic access to the records Sterling maintains relating to the employment of Plaintiff.  (*See* Rawlins Decl. ¶ 15.)

Upon accessing those records, Ms. Rawlins reviewed the electronic Log Entry and verified that Plaintiff's onboarding followed this process.  Ms. Rawlins viewed that on August 16, 2018 at

8:49 a.m. p.m., a Job Offer Confirmation initial notification email was sent to Plaintiff Aurelia Mancilla.  The Log Entry also reflects that Ms. Mancilla accessed the Sterling Candidate Portal on August 31, 2019.  (*See* Rawlins Decl. ¶ 16, Ex. C).  The Log Entry reflects that the following documents concerning Ms. Mancilla were electronically signed by Ms. Mancilla on August 31, 2019:

- ABM Biometric Privacy Employee Notice and Consent Form; Code of Business Conduct; Customer Confidentiality; Drug-Free Workplace Policy Agreement;

- Emergency Contact Information; Employee Instructions, Information and Work Rules; Service Worker Employee Policy Handbook Acknowledgment; Employee's Withholding Allowance Certificate;

- Employment Eligibility Verification; Form W-4 Confirmation for California; Health Care Exchange Notices; **Mutual Arbitration Agreement Acknowledgment**;

- Pay Method Selection; Policy Against Harassment in the Workplace; Acknowledgement Regarding Prior Employer Information; and Wage Policy.

(*See* Rawlins Decl. ¶ 17, Ex. C.)

Thus, the evidence shows that ABM's standard onboarding process provided by Sterling was followed by Plaintiff.  The email addresses she provided for communication with Sterling and her use of the password she created for access to the Sterling Candidate Portal provided her with the requisite electronic security.  And, in completing this onboarding process, Plaintiff electronically signed the Mutual Arbitration Agreement on August 31.

## ARGUMENT

I.    **THE COURT SHOULD COMPEL ARBITRATION AND/OR STAY THIS ACTION PENDING ARBITRATION**

  A.    **The Federal Arbitration Act Mandates the Enforcement of Plaintiff's Arbitration Agreement**

The Federal Arbitration Act ("FAA") requires courts to enforce arbitration agreements, reflecting the federal policy strongly favoring arbitration as an alternative dispute resolution process.  9 U.S.C. § 1, *et seq.  See also Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 147-48 (2d Cir. 2004); *Vera v. Saks & Co.*, 335 F.3d 109, 116 (2d Cir. 2003) (*per curiam*); *Collins & Aikman Prods. Co. v. Bldg. Sys.*, 58 F.3d 16, 19 (2d Cir. 1995).  The Act "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed [in] arbitration on issues as to which an arbitration agreement has been signed." *Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 844 (2d Cir. 1987) (emphasis in original).  Indeed, it is the intent of Congress "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible."  *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 22 (1983); *Stolt-Nielsen S. A. v. Animal Feeds Int'l Corp.,* 559 U.S. 662, 682 (2010) ("we have said on numerous occasions that the central or 'primary' purpose of the FAA is to ensure that 'private agreements to arbitrate are enforced according to their terms'") (internal citations omitted).

Further, the determination of whether a dispute is arbitrable under the FAA consists of two prongs: "(1) whether there exists a valid agreement to arbitrate at all under the contract in question…and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement." *Hartford Acc. & Indem. Co. v. Swiss Reinsurance Am. Corp.,* 246 F.3d 219, 226 (2d Cir. 2001).  To find a valid agreement to arbitrate, a court must apply the "generally accepted principles of contract law." *Genesco, Inc. v. T. Kakiuchi & Co., supra* at 845.

### B.     Second Circuit Precedent Dictates the Enforcement of Plaintiff's Arbitration Agreement

Similarly, the Second Circuit has articulated four criteria for determining whether to compel arbitration: (1) whether there is an agreement to arbitrate; (2) whether the asserted claims fall within the scope of the arbitration agreement; (3) if federal statutory claims are at issue, whether Congress intended those claims to be non-arbitrable; and (4) if only some of the claims are subject to arbitration, whether to stay the balance of the proceedings pending arbitration. *Genesco,* 815 F.2d at 844-52. *See also Oldroyd v. Elmira Sav. Bank*, 134 F.3d 72, 75-76 (2d Cir. 1998). It is well settled that Congress intends Title VII claims to be arbitrable. *See, e.g.*, *14 Penn Plaza LLC v. Pyett,* 556 U.S.247, 261 (2009).

In this case, both the FAA and the Second Circuit's criteria for arbitrability are easily met because: (1) there can be no doubt that the parties executed an arbitration agreement; (2) the Agreement clearly provides that the parties agree to arbitrate all claims arising out of Plaintiff's employment with ABM, including claims of discrimination and harassment - the very same claims Plaintiff asserts in this action; (3) claims brought under Section Title VII and the common law are arbitrable; and (4) there are no other non-arbitrable claims in this action. Therefore, the Court must dismiss or stay Plaintiff's claims in favor of arbitration. *See* 9 U.S.C. §§ 3, 4. *See also WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997) (district court "must stay proceedings if satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding.").

### 1.     The Parties Entered Into A Valid Arbitration Agreement

As discussed, Plaintiff expressly and unequivocally agreed, with her electronic signature, to arbitrate all claims arising out of her employment including claims of harassment. (*See* Rawlins Decl., Ex. B.) Therefore, it cannot be disputed that there was a valid agreement to arbitrate

between Plaintiff and ABM.  *See Oldroyd*, 134 F.3d at 74-76 (arbitration clause contained in employee agreement constitutes valid agreement to arbitrate); *Martin v. SCI Mgmt. L.P.*, 296 F. Supp. 2d 462, 466-67 (S.D.N.Y. 2003); *Gonder v. Dollar Tree Stores, Inc.,* 144 F. Supp. 3d 522, 530 (S.D.N.Y. 2015).

### 2.       Plaintiff's Claims Fall Within the Scope of Her Arbitration Agreement

The FAA "is an expression of a strong federal policy favoring arbitration as an alternative means of dispute resolution." *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 171 (2d Cir. 2004) (citation omitted). ).  "[U]nder the FAA, 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" *Id at* 171 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 941, 74 L.Ed.2d 765, 785 (1983)).

Here, there can be no dispute that Plaintiff agreed in writing to arbitrate her claims.  By signing the Agreement, Plaintiff agreed to submit "any claim . . . that arises between [Mancilla] and [ABM and] its . . . employees. . ." to final and binding arbitration.  (*See* Rawlins Decl. Ex. A.) The Agreement expressly states:

> Final and binding arbitration before a single, neutral arbitrator shall be the exclusive remedy for any "Covered Claim" … . A "**Covered Claim**" is any claim (except a claim that by law is non-arbitrable) that arises between me and the Company, its past, present, and future: officers, directors and/or employees, including but not limited to claims arising and/or relating in any way to my hiring, my employment with, and/or the severance of my employment with, the Company.

(*Id*.) (Emphasis in original.)  As noted, the Agreement excepts from binding arbitration claims not subject to arbitration by law, such as a claim or charge with the NLRB, the Workers' Compensation Appeals Board, or the Unemployment Insurance Appeals Board, and disputes covered by a collective bargaining agreement.  (*Id*.)  No such claims have been alleged in this case.

Here, Plaintiff's Complaint is based entirely on her employment with ABM.  Specifically, Plaintiff alleges while working for ABM her "supervisor" directed her to follow him to an area where he said cleaning work was required and she was raped by her "supervisor".  (*See* Complaint ¶¶ 19 – 28.) [2] Based on these allegations, the Complaint states common law claims for reckless and careless failure to provide safe working conditions; reckless and careless hiring, supervision and/or retention; assault and battery; false imprisonment; negligent infliction of emotional distress; intentional infliction of emotional distress and sexual harassment in violation of Title VII.

All of Plaintiff's claims against the individual Defendants, Scott Salmirs and Eddie Sanders are arbitrable because they are arising out of her employment, intertwined with her claims against ABM and because they are covered by the arbitration agreement.  And, the Mutual Arbitration Agreement further contemplates that it covers claims against both an ABM entity and its employees. *See Boyum v. Horizon Condo.*, No. 05 CIV. 4801 TPG, 2007 WL 576052, at *4 (S.D.N.Y. Feb. 22, 2007) (granting Defendant's motion and finding that plaintiff's proper remedy was arbitration of Plaintiff's causes of action including intentional infliction of emotional distress); *Chamois v. Countrywide Home Loans*, No. 02 CIV. 9553 (MBM), 2003 WL 23022033, at *1 (S.D.N.Y. Dec. 29, 2003) (granting Defendant's motion to compel arbitration including Title VII and common law claims).

In addition, the Second Circuit has held that arbitration agreements require arbitration of claims against employees such as Sanders where the claims are intertwined with arbitrable claims against signatories.  *See Ragone v. Atlantic Video*, 595 F.3d 115, 126-27 (2d Cir. 2010).  There, the Second Circuit Court of Appeals affirmed the district court's grant of defendants' motion to

---

[2] We are citing to the complaint for purposes of this motion only and expressly deny all factual allegations and wrongdoing.

dismiss the complaint and compel arbitration of plaintiff's sexual harassment claim where one of the defendants, ESPN, was not a signatory to plaintiff's arbitration agreement with the other defendant, Atlantic Video ("AVI"). The complaint's "claims of unlawful harassment and retaliation against AVI and ESPN rely on the concerted actions of both defendants and are therefore substantially interdependent." *Id.* at 119. The complaint alleged that ESPN personnel harassed the plaintiff, supervised her and witnessed and condoned the harassment. The court held that non-signatory ESPN could compel plaintiff to arbitrate her dispute with ESPN. The court found there was "no question that the subject matter of the dispute between Ragone and AVI is factually intertwined with the dispute between Ragone and ESPN. It is, in fact, the same dispute: whether or not Ragone was subjected to acts of sexual harassment which were condoned by supervisory personnel at AVI and ESPN." *Id.* at 128.

Similarly, here Plaintiff's claims against ABM and Sanders are factually intertwined. Plaintiff is alleging, although it is expressly denied, that Sanders is an agent of ABM "with authority delegated from ABM to supervise Plaintiff". (*See* Compl ¶ 16.) The Agreement makes clear that it applies to Plaintiff's claims in that it states it applies to "any claim … that arises between [Plaintiff] and [ABM and] its … employees … **including but not limited to** claims arising [from Plaintiff's employment]" (emphasis added). Accordingly, all of Plaintiff's claims are subject to arbitration.

### 3.    Plaintiff's Statutory Claims Are Arbitrable

Plaintiff's claims of harassment under Title VII is arbitrable. *See, e.g.*, *Lawrence v. Sol G. Atlas Realty Co.,* 841 F.3d 81, 83 (2d Cir. 2016) (finding claims brought under Title VII, among other statutes, may be subject to arbitration); *Pitter v. Prudential Life Ins. Co. of Am.,* 906 F. Supp. 130 (E.D.N.Y. 1995) (granting motion to stay and compel arbitration of plaintiff's complaint, including claims brought under Title VII subject to arbitration). Recently, Title VII harassment

claims have specifically been found to be arbitrable by the Southern District of New York.  In *Latif v. Morgan Stanley & Co. LLC*, No. 18-cv-11528, 2019 WL 2610985, at * 3-4 (S.D.N.Y. June 26, 2019), the Court held that N.Y. C.P.L.R. § 7515 ("§ 7515"), which prohibits mandatory arbitration clauses for sexual harassment claims "[e]xcept where inconsistent with federal law," is indeed inconsistent with federal law, specifically the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA"), and thus inapplicable by its own terms. Accordingly, the current state of the law allows for the arbitrability of Title VII sexual harassment claims and all of Plaintiff's statutory claims are clearly subject to arbitration.

### 4.       All of Plaintiff's Claims Are Arbitrable

The fourth part of the Second Circuit's inquiry, *i.e.,* whether non-arbitrable claims should be stayed pending arbitration, is inapplicable here because all of Plaintiff's claims are arbitrable. *See Martin*, 296 F. Supp. 2d at 467 ("Because all of the plaintiff's claims are arbitrable, it is not necessary to determine whether any non-arbitrable claims should be stayed pending the outcome of the arbitration.").

While Plaintiff may argue that her Title VII harassment claim is not arbitrable, Plaintiff's argument would be meritless because the Agreement expressly states that "the arbitrator shall apply the substantive law …. of the state in which the Covered Claims arose, or federal law, or both…" and Title VII claims are arbitrable under Georgia law.[3]  *See Albertson v. Art Inst. of*

---

[3]   Similar to New York law, under Georgia law to determine whether arbitration should be compelled, the court assesses whether: (1) there is a valid written agreement to arbitrate; (2) the issue sought to be arbitrated is arbitrable under the agreement; and (3) the party asserting the claims has failed or refused to arbitrate the claims. *Lomax v. Woodmen of the World Life Ins. Soc'y*, 228 F. Supp. 2d 1360, 1362 (N.D. Ga. 2002).  Under Georgia contract law, "[a] definite offer and complete acceptance, for consideration, create a binding contract."  *Moreno v. Strickland*, 567 S.E.2d 90, 92 (Ga. Ct. App. 2002).  As the Eleventh Circuit has noted, "[t]o satisfy the consideration requirement under Georgia law, an accepting party to a contract can either tender bargained-for performance or make a mutual promise."  *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008).  The parties to the Arbitration Agreement here made mutual promises to

*Atlanta*, No. 1:16-CV-03922 WSDRGV, 2017 WL 9474223, at *1 (N.D. Ga. Mar. 23, 2017), report and recommendation adopted, No. 1:16-CV-3922-WSD, 2017 WL 1361293 (N.D. Ga. Apr. 14, 2017) (granting motion to compel arbitration involving Title VII discrimination and retaliation claim); *Sherrard v. Macy's System and Technology Inc.*, 724 Fed. App'x. 736, 739-741 (11th Cir. 2018) (affirming Northern District of Georgia's court order to compel arbitration of Title VII discrimination claims); *Royal v. CEC Entertainment, Inc.*, No. 4:18-cv-302, 2019 WL 2252151, at *4-5 (S.D. Ga. May 24, 2019) (granting motion to compel arbitration involving Title VII claims).

### C.    There Has Been No Waiver of the Arbitration Agreement

The FAA further requires a court to determine whether an arbitration agreement has been waived and is thereby unenforceable. *See Doctor's Assocs., Inc. v. Distajo,* 66 F.3d 438, 456 (2d Cir. 1995) (describing the waiver defense as a "statutorily mandated inquiry in [9 U.S.C.] § 3 cases"). "[A]ny doubts concerning whether there has been a waiver are resolved in favor of arbitration. *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.,* 252 F.3d 218, 229 (2d Cir. 2001). While there is no bright line rule applied to a waiver determination, three factors are considered: "(1) the time elapsed from when the litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice." *Id.* As the facts will show, there has been no waiver of the arbitration agreement by ABM.

First, virtually no time has passed between Plaintiff's initiation of the litigation and ABM's motion to compel arbitration; in fact, it is the first action ABM has taken after removing this action from State Court. Second, there has been no other litigation activity to date in either the State Court Action or this federal action. Third, Plaintiff suffers no prejudice by arbitrating her claims.

---

submit all disputes to binding arbitration in Georgia. Accordingly, even under Georgia law, Plaintiff's claims must be arbitrated.

No costly discovery has taken place and ABM has promptly sought the enforcement of the Agreement. On February 4, 10, 11, 12, and 13, 2020, prior to bringing this motion, ABM's counsel sent numerous emails to Plaintiff's counsel requesting that Plaintiff review the Agreement and stipulate to arbitration. (*See* Benson Decl. Ex. C) Plaintiff's counsel ultimately responded stating that Defendants would need to make a motion. (*Id.* at Ex. C)

Accordingly, ABM has not waived its right under the Agreement and Plaintiff is similarly bound to its terms—that Plaintiff must find relief from an arbitrator, and not this Court.

### D.   The Court Should Dismiss Plaintiff's Complaint Without Prejudice to Her Ability to Pursue Such Claims In Arbitration

Courts in this Circuit consistently dismiss complaints that are subject to an arbitration agreement. *See, e.g., Brown v. St. Paul Travelers Co.,* 331 Fed. Appx. 68, 2009, 2009 WL 1740573, at \*70 (2d Cir. June 19, 2009) ("Defendant's motion to dismiss [employee's] complaint and to compel arbitration was properly granted by the District Court"); *Henry v. Turner Const. Co.,* No. 09 Civ. 9366(SAS), 2010 WL 2399423, \*4 (S.D.N.Y. Jun. 14, 2010) (granting motion to dismiss complaint and compel arbitration); *Litvinov v. UnitedHealth Group, Inc.*, 2014 WL 1054394, at \*3 (S.D.N.Y. Mar. 11, 2014) (compelling arbitration and dismissing the complaint); *Robinson v. Entm't One US LP*, No. 14-CV-1203 AJN, 2015 WL 3486119, at \*1 (S.D.N.Y. June 2, 2015) (dismissing employment discrimination claims in favor of arbitration based upon the arbitration agreement); *Safra Sec., LLC v. Gonzalez,* 764 F. App'x 125 (2d Cir. 2019) (affirming the District Court's decision which compelled arbitration and dismissed the complaint).

Here, all of Plaintiff's claims are subject to arbitration and, accordingly, this Court should dismiss the Complaint without prejudice to Plaintiff's ability to pursue her claims in arbitration.

**E.   The Court Should Stay This Action Pending Arbitration If the Action Is Not Subject to Dismissal**

Alternatively, if this Court does not dismiss Plaintiff's Complaint outright, the Court should stay the action.  9 U.S.C. §§ 3, 4.  Courts in this Circuit regularly stay complaints that are subject to an arbitration agreement.  *See, e.g., Moton v. Maplebear Inc.*, 2016 U.S. Dist. LEXIS 17643, at \*25-26 (S.D.N.Y. Feb. 9, 2016) (staying action pending arbitration); *Factor v. Societe Generale N. Am., Inc*., 2006 U.S. Dist. LEXIS 32565, at \*8-9 (S.D.N.Y. May 24, 2006) (granting motion to compel and staying action pending arbitration).  *See also, Katz v. Cellco P'ship,* 794 F.3d 341 (2d Cir. 2015) ("In sum, while we recognize the impetus for a rule permitting dismissal, we conclude that the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested).

<u>**CONCLUSION**</u>

In sum, Defendant ABM has established that: (1) Plaintiff entered into a valid arbitration agreement; (2) her claims clearly fall within the scope of that agreement; (3) her claims are arbitrable; and (4) there has been no waiver of the arbitration agreement.  Therefore, ABM respectfully request that the Court dismiss or stay this action in its entirety and compel Plaintiff to submit her claims to arbitration, and grant Defendant such other or further relief as the Court deems appropriate.

Date:   February 21, 2020
        New York, New York

/s/ Craig R. Benson
_____
Craig R. Benson
Ivie A. Serioux
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY  10022.3298
212.583.9600

*Attorneys for Defendants*
    *ABM Industries, Incorporated; ABM*
    *Industries, Incorporated, d/b/a ABM*
    *Janitorial Services, Inc., ABM Industries,*
    *Incorporated d/b/a ABM Onsite Services,*
    *Inc., and Scott Salmirs*